**PHILADELPHIA TRANSPORTATION & LIGHTERAGE CO. v. PENNSYLVANIA R. CO. et al.**

(District Court, E. D. Pennsylvania. February 21, 1907.)

No. 52.

COLLISION—TOW AND VESSEL AT WHARF—FAULT OF TUG.

The injury of a lighter, which was the outside vessel in the front tier of a tow, by collision with a schooner lying at wharf, *held*, on the evidence, due to the fault of the tug in keeping too close to the wharf and not to a collision between the boat on the other side of the tow and a meeting tow.

In Admiralty. Suit for collision.

Edward F. Pugh, for libelant.

Sharswood Brinton, for Pennsylvania R. Co.

James F. Campbell, for Philadelphia & R. Ry. Co.

HOLLAND, District Judge. At 10 o'clock p. m., April 17, 1903, Lighter No. 15, belonging to libelant, was taken in tow at Liberty Light, in New York, by the tug Overbrook, belonging to the Pennsylvania Railroad Company, for a voyage to Philadelphia. She was of scow build, with square bow and stern, and was laden, on deck and under deck, with cast-iron sugar fillers. The tow was made up with Lighter No. 15, the outside boat on the starboard side of the first tier of four. There were about 47 boats in the tow, which was about 700 feet long; some of them loaded, but most of them light. In order that this tow or flotilla could be managed, it was necessary to have the assistance of other smaller tugs to steer it, and the Overbrook upon this occasion was assisted in this particular by the small tug Willie. There were two hawsers thrown out, one from the boat on the port side, and the other from Lighter No. 15 on the starboard side, of the front tier, to the tug Overbrook, which had the flotilla in tow. They were proceeding south against the tide, had passed through Kill Von Kull, and entered the northern part of Staten Island Sound opposite Elizabethport. Along the water's edge at Elizabethport there are bulkheads, at which the schooner James D. Dewell was lying on this night discharging lumber. Her bow was pointing northward, in close to the bulkhead, and her stern some distance out in the stream. At this point Staten Island Sound is about 600 feet wide, and it was the duty of the Overbrook, in charge of the flotilla, to keep as near the Jersey shore as the surroundings would permit. In passing Elizabethport, Lighter No. 15 came in contact with the schooner Dewell, near the lighter's bow, and scraped along to its stern. The lighter suffered some damage, and one of the sugar fillers was practically destroyed. At the time the Overbrook, with her tow, arrived opposite the schooner Dewell, the tug Ashbourne, in charge of a flotilla of boats loaded with coal, which had left Port Reading, N. J., bound for New York Harbor, four abreast, was towing north with the tide, which was running very rapidly. As the latter passed Elizabethport it collided with the tow of the Overbrook.

There is no dispute in this case about the fact that Lighter No. 15 was damaged, and that one of the sugar fillers was injured. It is contended, however, by the Pennsylvania Railroad Company that the damage to Lighter No. 15 was caused by the tow of the Ashbourne colliding with the Overbrook's flotilla, pushing it over against the schooner Dewell. On the other hand, the Philadelphia & Reading Railway Company claims that this is not the fact, but that the Overbrook's tow, in approaching Elizabethport, was kept so close to the Jersey shore that Lighter No. 15 on the starboard side of the front tier collided with the schooner Dewell, and the damage had already been done when the Ashbourne's flotilla came in contact with it on the port side. If the Overbrook kept too close to the Jersey shore, and, as

a result, caused Lighter No. 15 to collide with the schooner Dewell, and the damage was done before the tail end of the Ashbourne's flotilla had struck it, then, of course, the responsibility for the damage could not be laid upon the Reading Railway Company. The evidence clearly establishes that as the Overbrook approached Elizabethport the west line of the tow was more than 50 feet from the shore, but as it proceeded it drifted in toward the point where the schooner Dewell lay, and when Lighter No. 15 had arrived at about that point its bow struck the schooner, which lay at an angle, with its stern out in the stream, a little aft the bow, and scraped along until the stern of the schooner and the stern of the lighter were in contact with each other.

The claim on the part of the witnesses for the Pennsylvania Railroad Company that when Lighter No. 15 arrived opposite the schooner there was a space of 15 feet between them, and the Overbrook's tow was at a standstill, and that the tail end of the north-bound tow struck a glancing blow on the port side of the Overbrook's tow and drove it over the 15 feet, crushing Lighter No. 15 into the schooner, is rather an improbable story, as the Overbrook was pulling on the tow, sufficiently at least to hold it against the current in the stream, and it is not likely that a glancing blow, such as described by the witnesses, could have driven the whole of that aggregation of barges over against the schooner Dewell, a distance of 15 feet. The evidence of the mate on the Dewell and of the captain of Lighter No. 15 establish clearly that the Overbrook's bow was in too close to the Jersey shore, because it is clear that the bow of Lighter No. 15 first struck the schooner a little aft the bow and scraped along to the stern, and the impact received from the Ashbourne's tow did not at all increase the amount of damage already done to the lighter. It may be true that the north-bound tow had no right to be so far over to the Jersey side of the channel, but, as it did not result in any injury to the claimants here, they cannot be held liable for the damage caused to the lighter by the tug of the Pennsylvania Railroad Company.

Concluding, as we do, that the damage was caused by the negligence of the Pennsylvania Railroad Company's tug in keeping too close to the Jersey shore, and that the impact received from the tail end of the Ashbourne's tow had nothing to do with the cause or extent of the damage, a decree will be entered in favor of the libelant, and against the Pennsylvania Railroad Company, respondent; and it is so ordered.